United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES E. ROBINSON, SR.,

Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.

Defendants.

_____________________________________/

No. C 04-02610 JSW

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants the City and Count of San Francisco ("City"), Municipal Transit Agency ("MUNI"), Michael Burns ("Burns"), and Kathleen Forrester ("Forrester") (collectively "City Defendants"). Having considered the parties' pleadings, relevant legal authority, and the record in this matter, the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing date set for December 16, 2005 is VACATED.

The City Defendants' motion is GRANTED, with leave to amend as set forth in the terms of this Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the allegations in the Second Amended Complaint ("SAC"), Robinson, who was a pimp in the 1970's and 1980's but later became a minister, ran for the position of First Vice President of the Executive Board of the Transport Workers of America Local 250A ("Local 250A"). (SAC, ¶ 1.) Robinson wrote a novel about his former experiences as a pimp,

United States District Court
For the Northern District of California

and, prior to the union election, an article about Robinson and his former way of life appeared in the *San Francisco Examiner*. (*Id.*, ¶ 2, Ex. A.)

Robinson alleges that he successfully defeated the incumbent and was elected First Vice President on December 3, 2002. (*Id.*, ¶ 4.) He claims, however, that members of his union impeded his ability to perform his duties, that Local 250A's president claimed he was elected Third Vice President rather than First Vice President, and that he was harassed by members of Local 250A. (*Id.*, ¶¶ 5-10, 12.)

Robinson's novel was published on May 15, 2003, and on June 4, 2003, another article about his former life and his then current union activities appeared in the *San Francisco Weekly*. (*Id.*, ¶¶ 16-17, Exs. H, I.) On June 4, 2003, in apparent response to the publication of Robinson's novel and the *San Francisco Weekly* article, the Executive Board of Local 250A held a meeting. (*Id.*, ¶ 18.) Robinson claims that union officials suggested that Robinson give up his office. (*Id.*)

The bulk of the allegations in the SAC address actions by defendants who have been dismissed from this case. However, Robinson claims that on January 15, 2003, Burns "initiated a thirty (30) day moratorium, whereby any and all new union officials were to be trained by their predecessor," the first time such a moratorium had been established. (*Id.*, ¶ 6.) Robinson alleges that Forrester "aggressively solicited workers of [Local 250A] to sign a petition to remove" Robinson from his position with Local 250A. (*Id.*. ¶ 21.) Robinson further alleges that Burns "did affix to Plaintiff's and all workers' paychecks with [*sic*] a bias communique in regard to Plaintiff for sexual harassment ..." and that Forrester "submitted a biased and misleading communication to" Local 250A's president. (*Id.*, ¶¶ 27-28.)

On June 27, 2003, following a suspension hearing on charges of sexual harassment and selling his novel on company property, Robinson was removed from his office. (*Id.*, ¶¶ 26-31.)

Robinson initiated suit on June 28, 2004, and on March 17, 2005, he filed his Second Amended Complaint, in which he alleges causes of action: (1) under 42 U.S.C. § 1983; (2) under 42 U.S.C. § 1985(3); under the common law of conspiracy; (4) for negligent infliction of

United States District Court
For the Northern District of California

emotional distress; (5) for intentional infliction of emotional distress; and (6) for declaratory relief.

## ANALYSIS

### A. Legal Standards Applicable to Motions to Dismiss.

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). The Court may, however, consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Branch*, 14 F.3d at 453-54; *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th Cir. 1989).[1]

---

[1] After the briefing on this motion was complete, the Court received correspondence directly from Mr. Robinson enclosing materials that he claims support his allegations of on-going harassment. The Court has not considered these materials in ruling on this motion.

United States District Court
For the Northern District of California

**B. Robinson's Section 1985 Claim Is Dismissed With Leave to Amend.**

To establish a claim for a violation of 42 U.S.C. § 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corporation*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)) ("*Scott*").

To establish the second element of a Section 1985(3) claim, a plaintiff must allege and prove that the deprivation of the right in question was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1992) ("'the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights'" ) (quoting *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987)).

In *Scott,* the Supreme Court held, in the context of a Section 1985(3) claim based on alleged violations of First Amendment rights, that conduct taken by union members against non-members was not subject to the protection of Section 1985 where the alleged conspirators were driven by an economic or commercial motive. *Scott*, 463 U.S. at 838-39. Subsequent to the Supreme Court's decision in *Scott*, in *Sever, supra*, the Ninth Circuit stated that its general rule

> is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. ... More specifically, we require either that the courts have designated the class in question as a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever*, 978 F.2d at 1536 (citations and internal quotations omitted).

In this case, Robinson alleges that "the conspiratorial purpose was financial," and has not alleged facts demonstrating that the City Defendants were motivated by animus based on his membership in a protected class. The Court cannot, however, conclude that there are no facts upon which Robinson could base such a claim. Accordingly, the Court DISMISSES WITHOUT PREJUDICE the Section 1985(3) claim. If Robinson intends to pursue this claim, and if he can set forth facts alleging that the purported conspiracy was motivated based upon his membership in a protected class, he is granted leave to amend.

**C. Robinson's State Tort Law Claims Are Dismissed With Leave to Amend.**

Robinson has not disputed any of the Defendant's arguments as to his claims for common law conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Indeed, in his supplemental memorandum in opposition to the City Defendants' motion to dismiss, he states that he "seeks to proceed ... on his § 1983 claims," and does not address the remaining claims at all.[2]

With respect to the state law claims, Robinson has not alleged compliance with the California Tort Claims Act ("CTCA"), nor has he attempted to refute the City Defendants' assertion that he has not complied with the CTCA. Pursuant to the CTCA, a plaintiff is required to file a claim with a municipal entity prior to filing a lawsuit. *See, e g., State v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004). That alone would warrant dismissal without prejudice of the state law claims. However, dismissal of the intentional infliction of emotional distress claim is also warranted because the factual allegations insufficiently allege extreme or outrageous conduct. *See, e.g., Cochran v. Cochran*, 64 Cal. App. 4th 488, 496 (1998) ("the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities") (emphasis omitted).

"[T]he negligent causing of emotional distress is not an independent tort but the tort of negligence." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989)

---

[2] The City Defendants requested either that the Court not consider this supplemental pleading or give them leave to address the arguments therein. Because the Court has considered it only for its lack of opposition to Defendants' arguments on the state law claims, the City Defendants' requests are denied.

(quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195 (emphasis omitted)). Accordingly, Robinson must establish the traditional elements of a tort claim, namely that (1) the City Defendants owed him a duty of care, (2) they breached that duty, and (3) caused him damages. *Id.* He has not done so and dismissal of the claim for negligent infliction of emotional distress is warranted on this ground as well.

Finally, because Robinson's claim for common law conspiracy depends upon the commission of an actual tort, and because the Court has concluded that the facts alleged in the SAC are insufficient to allege such a tort, that claim is dismissed as well. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-12 (2004) (noting that civil conspiracy is not a cause of action but a doctrine imposing liability on persons who share with tortfeasors a common plan or design in perpetration of the tort).

Again, however, the Court cannot conclude on this record that there are no facts that could support these claims. Accordingly, the state tort law claims are DISMISSED WITHOUT PREJUDICE. If Robinson intends to pursue these claims, if he can allege compliance with the CTCA, and if he can allege facts beyond those set forth in the SAC, he shall be given leave to amend those claims.[3]

**D. Robinson Shall Be Given Leave to Amend His Section 1983 Claim.**

The City Defendants have also moved to dismiss Robinson's Section 1983 claim on the ground that he has not alleged, and cannot allege, facts demonstrating that the City Defendants deprived him of his union position or were motivated by racial animus. In his opposition to the City Defendants' motion, Robinson asserts that his Section 1983 claim is premised upon violation of his First Amendment rights.

Because the bulk of the allegations in the SAC are directed to the actions of defendants whom Robinson has dismissed, because the allegations as to this claim against the City Defendants are vague, and because the Court is dismissing Robinson's other claims without

[3] Robinson's claim for declaratory relief is dependent upon the remainder of his claims. Accordingly, if he intends to pursue that cause of action, he also is granted leave to amend that cause of action in accordance with the terms of this Order.

United States District Court
For the Northern District of California

prejudice, the Court shall afford Robinson one *final* opportunity to amend his complaint to clearly set forth his Section 1983 claims against the City, MUNI, Burns and Forrester.

**CONCLUSION**

For the foregoing reasons, the City Defendants' motion to dismiss is GRANTED with leave to amend. Robinson shall file his Third Amended Complaint, in accordance with the terms of this Order, by December 23, 2005. The City Defendants shall file their responsive pleading twenty days after service of the amended complaint.

This matter shall be set for a case management conference on **Friday, February 10, 2006** at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: December 5, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE